UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EDWARD SCHMIDT,

       Plaintiff,

v.                                          Case No. 1:05-CV-781
                                          Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), which denied his claim for Supplemental Security Income (SSI) and denied his claim for disability insurance benefits (DIB).[1]

       Plaintiff was born on January 9, 1946, completed four or more years of college, and had special job training, as well as previous employment, as a machinist (tool and dye) (AR 112, 177, 182).[2] Plaintiff alleges that he became disabled on December 31, 1992 (AR 15).[3] Plaintiff identified his disabling condition as "degenerative arthritis, needs knee replacements, needs [cataract]

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

[3] The court notes that plaintiff filed two unsuccessful applications for SSI in 1998 and 2003 (AR 14-15). Plaintiff has alleged disability onset dates of December 31, 1992, September 28, 1996 (when he was involved in an automobile accident) and January 1, 1997 (AR 15). For purposes of this decision, the ALJ accepted the earliest disability onset date of Decemer 31, 1992 (AR 15).

surgery, needs bone fusion in hands, feet" (AR 176). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on July 13, 2005 (AR 14-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff last met the disability insured status requirements of the Act on December 31, 1992 and that plaintiff had to establish that his disability began on or prior to that date to qualify for DIB (AR 15, 21). He has not engaged in substantial gainful activity since the alleged onset date of disability (AR 21). Second, the ALJ found that plaintiff suffered from severe impairments of osteoarthritis of the left knee, osteoarthritis of the hands, and an affective disorder (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to:

> lift and/or carry up to 10 pounds frequently and 20 pounds occasionally, to sit, stand or walk up to six hours per eight-hour workday provided he has the opportunity to sit or stand at will, with work limited to involving no more than occasional contact with the public, co-workers and supervisors.

(AR 21). The ALJ concluded that plaintiff had no past relevant work (AR 21). The ALJ also found that plaintiff's allegations regarding his limitations were not totally credible (AR 21).

At the fifth step, the ALJ made two separate determinations. First, the ALJ found:

> In view of the claimant's vocational characteristics and residual functional capacity as reported above, Medical Vocational rule 202.04 applies and directs a finding of disabled as of January 9, 2001, when the claimant attained age 55.

(AR 22). The ALJ concluded that plaintiff has been under a disability "since January 9, 2001, but not before that date" (AR 22). Based upon this determination, the ALJ found that plaintiff was disabled for purposes of SSI as of the date of his February 29, 2004 application (AR 22).

>Second, the ALJ found that:

>>In view of the claimant's vocational characteristics, if he could perform the full range of work at the light exertional level, Medical Vocational rules 202.20 and 202.13 would apply and would direct a finding of not disabled prior to January 9, 2001. Although the claimant has additional limitations which prevent the performance of the full range of work at that level, the vocational expert testified that a hypothetical individual with the claimant's vocational characteristics and residual functional capacity would be able to perform jobs existing in significant numbers in the economy.

(AR 22). Specifically, the ALJ found that plaintiff could perform 50,500 jobs in the state of Michigan, including work as an inspector, a machine-operator, an assembler or a file clerk (AR 21). Based on this determination, the ALJ found that plaintiff was not entitled to DIB, because he did not establish that his disability began on or prior to his last insured date of December 31, 1992 (AR 21-22).

### III. ANALYSIS

Plaintiff was represented by counsel at his administrative hearing (AR 555), but filed his complaint in this court without counsel. Plaintiff's complaint seeks review of the Commissioner's adverse decision pursuant to 42 U.S.C. § 405(g). Attached as an exhibit to plaintiff's complaint is a separate 135-paragraph document which seeks relief against the Social Security Administration on a number of grounds unrelated to this administrative appeal, and a separate document in which plaintiff states that he is "legally blind."[4]

After filing suit, plaintiff's failure to abide by the court's rules and orders resulted in the issuance of two orders rejecting documents that he submitted to the court. Defendant's

---

[4] While plaintiff has continually stated that he is "legally blind" and insists that all documents be printed in 20-point type or larger, some of his own documents, including his 135-paragraph attachment, are printed type considerably smaller than 20-point type.

counsel advised the court that plaintiff returned the administrative transcript to defendant, claiming that he was unable to read the transcript due to the font-size. Plaintiff also filed a motion to have the court format all documents in this suit to a font-size of 20 points or larger (which would include the administrative transcript prepared by defendant) under threat of a suit pursuant to the American with Disabilities Act (ADA). The court denied plaintiff's motion, noting that the ADA did not apply to the federal courts and that plaintiff was able to prepare documents in considerably smaller font sizes (such as the 135-paragraph attachment), either by himself or with the assistance of a third-party. *See* docket no. 14.[5]

The court issued two orders directing plaintiff to file an initial brief in support of his claim. *See* docket nos. 10 and 18. Plaintiff failed to comply with either order. Plaintiff has, however, submitted various documents in response to defendant's brief. *See* docket nos. 19 and 21. Although plaintiff faxed these documents to the court (in disregard of the court's rules), the court accepted these documents as plaintiff's reply brief.

### A.     ALJ's rejection of plaintiff's claim of blindness

The sole issue raised in plaintiff's response, and indeed in all of his filings with this court, is that he is "legally blind." The ALJ rejected plaintiff's claim that he suffered from a severe vision impairment:

---

[5] Plaintiff subsequently filed a complaint of judicial misconduct with the Sixth Circuit Court of Appeals against United States District Judges Richard Enslen, Julian Cook and the undersigned. *See* docket no. 21. These claims were summarily dismissed.

> Concerning the claimant's allegation of blindness, the one clearly identifiable and compelling piece of evidence in the record is a report of evaluation performed November 14, 2002 by Dr. Diskin of the Michigan Eye Institute [AR 367]. He noted the claimant's history of cataracts, and his report confirmed the existence of same. Dr. Diskin did not express immediate concern about the cataracts, given the claimant's "good" vision, stating that his corrected visual acuity was 20/30 OD and 20/25 OS. He recommended yearly exams to assure he has the proper prescription for glasses. The claimant bases his claim of blindness on a "report" from Kellogg Eye Center [AR 362-66]. This report dated August 29, 2002, before the above-cited exam, includes a piece of paper upon which is hand-written "Rt Eye 20/200, Lt Eye 20/200, This is considered legally blind." Nothing on this page identifies any person, nor does it state that any person has such visual acuity. It merely states what the term legally blind means. There are additional pages of this report that bear the name of the claimant, but do not contain any data to outweigh the report from Dr. Diskin. A later report from the University of Michigan Hospital dated May 25, 2004 [457-83] notes that upon an overall examination, the claimant reacted normally to light and his extraocular movements were intact. Accordingly, the claimant does not have a severe vision impairment.

(AR 17-18).[6]

The ALJ has the discretion to weigh the medical evidence and to resolve conflicts in that evidence. *See Bradley v. Secretary of Housing and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *King v. Heckler*, 742 F.2d 968, 74 (6th Cir. 1984). Here, the ALJ properly exercised his discretion by evaluating two conflicting pieces of medical evidence.

However, even if the August 29, 2002 Kellogg Eye Center report was undisputed evidence that plaintiff suffered from 20/200 vision, such evidence does not entitle plaintiff to DIB. This report from August 2002 does not establish that plaintiff suffered from 20/200 vision on or before his last insured date was December 31, 1992, nearly ten years earlier. Furthermore, ALJ found that plaintiff had been disabled since January 9, 2001, some 19 months before the Kellogg Eye

---

[6] Dr. Diskin states that plaintiff has corrected vision of 20/30 O.S. [left eye] and 20/25 O.D. [right eye]. "O.D." refers to the right eye, while "O.S." refers to the left eye. *See Dorland's Illustrated Medical Dictionary* (28th Ed.) at 1169, 1195.

7

Center report. Because plaintiff was deemed disabled more than one and one-half years before the Kellogg report, the statements in that report have no effect on the disability issue.

### B.  New evidence of plaintiff's blindness

Finally, plaintiff has presented this court with a photocopy of his Michigan Identification Card, which contains the words "legally blind."  *See* docket no. 6.  Plaintiff's identification card bears an expiration date of January 9, 2009.  Assuming that plaintiff obtained this card in compliance with Michigan law, it appears that it was issued no earlier than January 9, 2005. *See* M.C.L. § 28.292(13) ("[t]he secretary of state shall not issue an official state personal identification card under this act for a period greater than 4 years ").  Although plaintiff testified that he was registered with the Michigan Commission for the Blind and the National Federation for the Blind (567-70), he made no reference to the identification card at the hearing.  Similarly, the ALJ's decision makes no reference to the card.

Based on this record, the court will view plaintiff's presentation of this identification card as "new evidence" that was not considered by the ALJ.  When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under  42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[7]   Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there

---

[7] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand).  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

In order for plaintiff to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Here, plaintiff is not entitled to a sentence-six remand because there is no showing that ths identification card is material.

First, the Commissioner is not bound by Michigan's decision to place the words "legally blind" on the identification card.[8] Specifically, 20 C.F.R. § 404.1504 provides in pertinent part that:

> A decision by any nongovernmental agency any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

(emphasis added)

Second, even if the court assumed that plaintiff's identification card is supported by

---

[8] Under Michigan's "Blind and handicapped persons" statute, a "blind person" is defined as "an individual who has a visual acuity of 20/200 or less in the better eye with correction, or has a limitation of his or her field of vision such that the widest diameter of the visual field subtends an angular distance not greater than 20 degrees, as determined by the commission [for the blind]." M.C.L. § 393.351(a).

medical documentation that meets the Commissioner's requirement of "legally blind,"[9] the card only speaks to plaintiff's condition on or about January 9, 2005. The ALJ has already determined that plaintiff was disabled on January 9, 2001, four years before the presumed issuance of this card. Even if the ALJ considered this card as evidence that plaintiff was "legally blind" in 2005, this would not change the ALJ's determination that plaintiff was disabled in 2001. Accordingly, no remand is required in this case.

## IV.     Recommendation

I  respectfully recommend that the Commissioner's decision be affirmed.


Dated:  December 11, 2006                     /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[9] The Commissioner defines "statutory blindness" as "central visual acuity of 20/200 or less in the better eye with the use of correcting lens.  An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less."  *See* 20 C.F.R. § 404.1581.